HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT WITTENBERG, JR., | No. 12-cv-5090-RBL |
| Plaintiff, | ORDER |
| v. | (Dkt. #22) |
| PUBLIC UTILITY DISTRICT NO. 1 OF SKAMANIA COUNTY, et al., | |
| Defendants. | |

Plaintiff, the former general manager of the Skamania Public Utility District, has brought suit against the Utility and two of its commissioners for wrongfully terminating his employment. He argues that the commissioners fired him in retaliation for his family members' opposition to one of the commissioners' re-election and in retaliation for whistleblower complaints. The Utility has moved for summary judgment, arguing that it terminated Plaintiff because of an unduly large raise he gave to a colleague. The Court grants the motion in part and denies it in part.

## I. BACKGROUND

The Skamania County Public Utility District is run by three elected commissioners: Esch, Gale, and Leach. The commissioners select the general manager: in this case, Plaintiff. In the fall of 2010, Commissioner Esch ran for and won re-election. (Esch. Dep., 5:25, Dkt. #30-1.) The parties agree that Plaintiff's friends and immediate family actively opposed Esch's re-election (although they do not delve into specifics).

Order - 1

Esch's new term commenced in January 2011, and Plaintiff argues that the commissioner immediately began a campaign against him.  According to Plaintiff, Esch believed that Plaintiff had actively opposed his re-election as well, violating Wash. Rev. Code § 54.16.100, which prevents a manager from making "any contribution of money in aid or in opposition to the election of any candidate for public utility commissioner or to advocate or oppose any such election."  Esch's wife submitted public records requests relating to the 2010 election, presumably to determine if Plaintiff had played an improper role.  (*See* Pl.'s Resp., Dkt. #28 at 4 (citing Esch Dep., 26:6)).

Days into his new term, Esch issued what Plaintiff calls a "scathing" performance review.  (Pl.'s Resp. at 4.)  At his deposition, Esch stated that nothing changed in between the January performance review and the termination.  (Esch Dep., 42:23–25 ("Q.  So nothing changed from January, in terms of [Plaintiff's] performance?  A.  Would you – no, I don't believe so.")).  This comment appears taken somewhat out of place, however, as Commissioner Gale noted that Plaintiff had given large pay increases to two individuals, and this was a primary reason for Plaintiff's termination.  (Gale Dep. 37–38, Dkt. #30-2.)

In March and April 2011, Plaintiff filed whistleblower complaints with the Skamania County Prosecuting Attorney, alleging that Esch was "engaged in a gross waste of public funds" and "conducting an unlawful campaign of political retribution."  (Pl.'s Resp. at 5.)  These complaints appear to arise out of Mrs. Esch's public-records requests.

Plaintiff also alleged that Esch had illegally "altered a public record."  (*Id.*)  After Mrs. Esch's public-records requests, Plaintiff apparently requested records relating to his performance review.  He found that a certain document scored Plaintiff's work lower than Esch had read into the public record.  At deposition, Esch explained that the sheet was his working draft, created before the hearing, and that he gave Plaintiff higher scores on the record.  (*See* Esch Dep. 43:17; *see also* Gale Decl., Ex. F (police report)).

On April 13, 2011, Plaintiff presented the substance of his complaints to commissioners Gale and Leach.  (Pl.'s Resp. at 6; *see also* Wittenberg Decl., Ex. D (Letter to Gale)).

The Utility argues that Plaintiff was terminated because he gave large raises—8% and 19.5%—to two employees, one of which is described as Plaintiff's "good friend." (Def.'s Mot. for Summ. J. at 3.) Plaintiff explains that the commissioners had granted him discretion over these funds and that the raises were warranted because the employees had increased duties due to certain other employees leaving. (Pl.'s Resp. at 7–8.) Further, Plaintiff argues that this reason is pretextual: Defendants offered the raises as grounds for termination only after the advent of this suit. (*Id.* at 7.)

Based on these facts, Plaintiff alleges a violation of his constitutional rights to association and speech, wrongful discharge in violation of public policy, and violation of Wash. Rev. Code § 42.41.040, for retaliatory discharge against a whistleblower.

## II.   DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A. Whistleblower Claims and Termination in Violation of Public Policy

Under Wash. Rev. Code § 42.41.040, " [i]t is unlawful for any local government official or employee to take retaliatory action against a local government employee" who files a good faith whistleblower complaint in accordance with the statutory provisions.

The Court must conclude that Plaintiff's whistleblower claims were not made in good faith.  Rather, they were the product of an actual or perceived battle between himself and Esch.  Indeed, although Plaintiff disagreed with the substance of Mrs. Esch's public-records requests, there is absolutely no showing that these requests were "illegal."  They may have been burdensome for the Utility, but the law provides the mechanism.

The issue of the "altered public record" is a non-starter as well.  Plaintiff obtained Esch's records (apparently through the same process he alleges Mrs. Esch "improperly" used) and found a piece of paper that listed lower performance scores than Esch had read into the public record.  First, it is entirely unclear if that piece of paper is even a public record.  Second, there is simply no showing of any alteration—the public record was created at the Utility's hearing.  The fact that Esch gave *higher* scores than were listed on his notes is not grounds for a whistleblower complaint.  In sum, Plaintiff's complaints cannot be considered in "good faith" when they are devoid of substance and targeted at a perceived political enemy.  The claims are therefore dismissed.

### B. Violation of First Amendment Rights to Association and Speech

The right of public employees to engage in associative activity without retaliation has long been protected in law.  *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979).  Here, there are triable issues of fact as to whether the Utility terminated Plaintiff in retaliation for his immediate family's opposition to Commissioner Esch's re-election.  The timing alone of the termination alone is problematic, as is Plaintiff's assertion that the primary reason given for his termination—inappropriate pay raises—never arose until this lawsuit.

Further, the record is unclear as to whether Plaintiff is a "policy making" employee or is immune from termination for political reasons.  That issue will also be for a jury.

### C. Qualified Immunity

As noted above, Plaintiff's constitutional rights are clearly established.  If the Utility terminated Plaintiff as a result of his association with his own family (and their political activities), then Plaintiff may properly establish liability.

The Court must reject Defendants' argument that Wash. Rev. Code § 54.16.100 changes that conclusion. The statute does not, and cannot, prevent a manager's family from exercising their political speech, and it cannot prevent a manager from going home to his family. Thus, Defendant cannot argue that § 54.16 would have led a reasonable commissioner to believe that he could terminate a manger because the manager's family opposed his re-election. Qualified immunity is therefore denied.

### III.   CONCLUSION

For the reasons above, Defendants' Motion for Summary Judgment (Dkt. #22) is **GRANTED IN PART** and **DENIED IN PART**.

Dated this 10th day of May 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE