HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT WITTENBERG, JR.,

Plaintiff,

v.

PUBLIC UTILITY DISTRICT NO. 1. OF SKAMANIA COUNTY, et al.,

Defendant.

CASE NO. 12-cv-5090-RBL

ORDER

Defendant moves for reconsideration of a single issue: to determine, as a matter of law, whether Plaintiff, in his role as General Manager of the Utility District, falls within the "policymaker" exception to the First Amendment. (Dkt. #44).

## I. BACKGROUND

The Skamania County Public Utility District is run by three elected commissioners: Esch, Gale, and Leach. Each commissioner possesses a single vote on matters to be decided by the Utility District, with a majority vote required to pass resolutions or otherwise undertake Utility District action at the Board level. The commissioners select a general manager to implement their policy. Plaintiff Wittenberg had served that role since May 1, 2001. In the fall of 2010, Commissioner Esch ran for and won re-election. (Esch. Dep., 5:25, Dkt. #30-1.) The parties

agree that Wittenberg's friends and immediate family actively opposed Esch's re-election. (Wittenberg. Decl., ¶ 9, Dkt# 29, p.3.)

Esch's new term commenced in January 2011, and Wittenberg argues that the commissioner immediately began a campaign against him.  According to Wittenberg, Esch believed that he had actively opposed his re-election, violating Wash. Rev. Code § 54.16.100, which prevents a manager from making "any contribution of money in aid or in opposition to the election of any candidate for public utility commissioner or to advocate or oppose any such election."

In March and April 2011, Wittenberg filed whistleblower complaints against Esch with the Skamania County Prosecuting Attorney, believing that Esch altered or injured a public record in violation of Washington law.  This Court subsequently dismissed plaintiff's whistleblower claims on summary judgment.

On May 24, 2011, at a special meeting of the Utility District—which only Gale and Esch attended—a motion was passed placing Wittenberg on administrative leave until the next regularly scheduled Utility District meeting.  At the next meeting, the Utility District adopted a resolution, by a vote of 2-to-1, officially discharging Wittenberg from the position of General Manager.

Plaintiff brought suit against the Utility, Commissioner Esch, and Commissioner Gale, alleging violations of his constitutional rights to association and speech under 42 U.S.C. § 1983, wrongful discharge in violation of public policy, and retaliatory discharge of a whistleblower in violation of Wash. Rev. Code § 42.41.040.  Defendants moved for summary judgment, which was granted for the claims of retaliatory discharge of a whistleblower and wrongful discharge in violation of public policy, but denied on the § 1983 claims of a violation of First Amendment

rights to association and speech.  (Dkt # 38.)  Both parties filed motions to reconsider.  The Plaintiff's motion for reconsideration regarding the nature and basis of the whistleblower claims was denied.  (Pl.'s Mot. for Reconsideration, Dkt. #42.)  Defendant's motion for reconsideration of the Court's ruling on summary judgment is before the Court. (Df.'s Mot. for Reconsideration, Dkt. #44.)  Defendants contend that Plaintiff's duties as General Manager compel the conclusion that he was a "policymaker" and could be terminated for purely political reasons.

By Washington law, appointed managers have the following specific duties:

> The manager shall be the chief administrative officer of the district, in control of all the administrative functions and shall be responsible to the commission for the efficient administration of the affairs of the district placed in his or her charge.  The manager shall be an experienced executive with administrative ability… The manager shall carry out the orders of the commission and see that the laws pertaining to matters within the functions of his or her department are enforced; keep the commission fully advised as to the financial condition and needs of the districts;…. and recommend to the commission what development work should be undertaken;… recommend to the commission compensation of the employees of his or her office...; hire and discharge employees under his or her direction; and perform such other duties as may be imposed upon the manager by resolution of the commission.
>
> The manager may attend all meetings of the commission and its committees, and take part in the discussion of any matters pertaining to the duties of his or her department, but shall have no vote.

Wash. Rev. Code § 54.16.100.  In addition, Plaintiff asserts that in "his role as General Manager, [his] duties were to serve as the chief administrative officer of the [Utility District], with responsibility for all managerial, budgetary, personnel and executive management of the [Utility District] and its personnel." (Compl. ¶ 3.4, Dkt. #1, p.3.)  "In his role as General Manager, [he] also implemented the policies of the [Utility District], as adopted by resolution of the elected Board of Commissioners of the [Utility District]." (*Id.* at ¶ 3.5.)  Plaintiff stated that as General Manager, he controlled the financial and professional capabilities of the Utility District. (Wittenberg Dec., ¶ 27, Dkt. #29, p.8.)  During his time in the district, Plaintiff "won multiple awards and recognitions for his performance, and is recognized in the industry as an

accomplished, respected utility manager." (Compl. ¶ 3.2, Dkt. #1, p.3.) Plaintiff contends that he "greatly improved the financial and professional capabilities of the [Utility District]. He and his staff achieved balanced budgets, established multimillion dollar reserve accounts, developed a coherent and guiding corporate structure for the [Utility District], and supervised and developed staff members and their capabilities." (Compl. ¶ 3.6, Dkt. #1, p.3.)

Neither party contests the facts regarding the duties of the General Manager of the Utility District. However, based on these facts, Defendants allege that as a matter of law Plaintiff was employed as a "policymaker," and termination was allowed "for purely political reasons." *Hobler v. Brueher*, 325 F.3d 1145, 1150. In contrast, Plaintiff contends that the proper inquiry into the policymaker exception is whether "party affiliation is an appropriate requirement for the effective performance of the public office involved," and that Defendants have not provided evidence sufficient to support that assertion. *Branti v. Finkel*, 445 U.S. 507, 517–18 (1980).

## II.   LEGAL STANDARD

**A.  Standard for Motions for Reconsideration**

Under Local Rule 7(h):

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

The Ninth Circuit has called reconsideration an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[4] (3d ed. 2000). "Indeed, a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly

1  discovered evidence, committed clear error, or if there is an intervening change in the controlling
2  law." *Id.* (quoting *389 Orange Street Partners*, 179 F.3d 656, 665 (9th Cir. 1999)).

3  **B.  Standard for Motion for Summary Judgment**

4  Summary judgment is appropriate when, viewing the facts in the light most favorable to
5  the nonmoving party, there is no genuine issue of material fact which would preclude summary
6  judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to
7  summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to
8  interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for
9  trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of
10 evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.
11 Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not
12 affect the outcome of the suit are irrelevant to the consideration of a motion for summary
13 judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary
14 judgment should be granted where the nonmoving party fails to offer evidence from which a
15 reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

16 **III.   DISCUSSION**

17 There are no disputed facts as to Wittenberg's duties, and determining whether he was a
18 policymaker is appropriate as a matter of law. *Hobler*, 325 F.3d at 1150. ("determining the
19 particular duties of a position is a factual question, while determining whether those duties
20 ultimately make a position a policymaking or confidential one is a question of law."); *Walker v.
21 City of Lakewood*, 272 F.3d 1114, 1132 (9th Cir. 2001) ("Insofar as the material duties of a
22 position are not at issue, the question of whether these duties ultimately make that position a
23 policymaking or confidential position cannot properly be submitted to a jury because it is a
24

question of law.") (internal citations omitted).  Additionally, the policymaker exception is "properly determined by summary judgment or occasionally a motion to dismiss rather than by trial, at least where the duties of the position, insofar as they are material, are not genuinely at issue." *Hobler*, 325 F.3d at 1150.  Therefore, because Wittenberg's duties as General Manager are not in dispute, this Court can properly determine the policymaker exception on a motion for summary judgment.

### A.  First Amendment Protections and the Policymaker Exception

The First Amendment protects the right to criticize government officials, to support a candidate opposing an elected official, or to run against an elected official. *See Branti*, 445 U.S. at 513–17.  Ordinarily, an elected official cannot fire or retaliate against an employee for his political opinions, memberships, or activities. *See id*.  However, this general rule has limitations.  In *Branti v. Finkel*, 445 U.S. 507 (1980) and *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court created the "policymaker" exception, recognizing that an elected official must be able to appoint some high-level, personally and politically loyal officials who will help him implement the policies that the public voted for. *Branti*, 445 U.S at 517–20; *Elrod v. Burns*, 427 U.S. 347, 367 (1976) (plurality op.).  "An elected official may dismiss these same policymaking employees if they are no longer loyal, if they oppose his re-election, or simply if the official would prefer to work with someone else." *Bardzik v. County of Orange*, 635 F.3d 1138, 1144 (9th Cir. 2011).

The Ninth Circuit has set forth "factors to be considered when determining whether a job is a policymaking position," including "vague or broad responsibilities, relative pay, technical competence, power to control others, authority to speak in the name of the policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1334

(9th Cir. 1997). "Although the factors set forth in *Fazio* are relevant considerations in determining whether [Plaintiff] is a policymaker, they should not be considered in a vacuum, but rather in light of the underlying purpose of the 'policymaker' exception." *Hunt v. County of Orange*, 672 F.3d 606, 611 (9th Cir. 2012). The essential inquiry encompassing the underlying purpose of the exception is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. However, the policymaker exception is not strictly limited to "party affiliation," but includes, "political affiliation, which includes commonality of political purpose and support." *Walker*, 272 F.3d at 1132.

### B. Political Affiliation as Required for Effective Performance

Under the above standard, the initial question is whether political affiliation is required for effective performance of the office. Plaintiff argues that because Board of Commissioners, which oversees the duties of the General Manager, is a non-partisan office that political affiliation cannot be a requirement. However, in *Biggs v. Best, Best & Krieger*, 189 F.3d 989 (9th Cir. 1999) the Ninth Circuit determined that even when defendants possess nonpartisan positions; it does not affect the policymaking analysis. *Id.* at 996 ("The fact that the city attorney, and even the city council, are nonpartisan positions in Redlands, does not affect the *Branti* policymaking analysis."). The proper inquiry in this case is whether political affiliation—and not party affiliation—is an appropriate requirement for the effective performance of the position. Moreover, "'[p]olitical affiliation' is broader than 'party membership' in that it includes 'commonality of political purpose and support.'" *Id.* (internal citations omitted).

Plaintiff also alleges that political affiliation and loyalty to a single member cannot be a requirement on a multi-member board. While it is true that loyalty to all members of the three

member board is not a requirement of the position (and is perhaps impossible), the point is irrelevant. The question is whether loyalty to the Board is required for effective performance, regardless of how many people make up the "hiring authority." Further, it seems important that loyalty to at least a majority of the Board (2 out of 3) exists. The General Manager is responsible for implementing the policy of the Utility District, as adopted by resolution of the elected Board of Commissioners. (Compl. ¶ 3.5, Dkt. #1, p. 3.) Because passing resolutions by the Board requires a majority vote, and the General Manager is the actor implementing the decisions of the Board, he would need to be loyal to a majority of the Board so they could trust that their policies are implemented as they intended. If that is not the case, the Board has the power to hire and fire the General Manager as they see fit.

Finally, Plaintiff asserts that the policymaker exception does not apply in discharges for the political beliefs of "intimate associates." However, a similar situation presented itself in *Biggs*, where an associate attorney at a private law firm that contracted with the city of Redlands was retaliated against for the political activities of her family. 189 F.3d 989. The fact that political statements were made by the plaintiff's intimate associates did nothing to bar the use of the policymaker analysis. *Id*. at 995. Therefore, Plaintiff's objection to the policymaker analysis is unwarranted.

### C. *Fazio* Factors

The Court will address the each factors set forth in *Fazio v. City & County of San Francisco*, 125 F.3d 1328 (9th Cir. 1997), in turn:

#### 1. Vague or Broad Responsibilities

Under Washington law, the general duties of appointed managers are very broad. The law simply states that, "the manager shall be the chief administrative officer of the district, in

1  control of all the administrative functions and shall be responsible to the commission for the

2  efficient administration of the affairs of the district placed in his or her charge." Wash. Rev.

3  Code § 54.16.100.  Also, Wittenberg stated that "he was responsible for all managerial,

4  budgetary, personnel, and executive management of the [Utility District] and its personnel."

5  (Compl. ¶ 3.4, Dkt. #1, p.3.)  Wittenberg was responsible for a range of duties under the broad

6  guidelines of the Washington Law.

   **2.     Relative Pay**

8  Wittenberg was the highest ranking employee in the district.  But, because there are

9  limited facts in the record to measure Wittenberg's pay relative to others within the Utility

10 District, it is not necessarily indicative that he had a relatively high salary compared to others.

   **3.     Technical Competence**

12 Wittenberg stated that during his time serving in the district, he "won multiple awards and

13 recognitions for his performance, and [was] recognized in the industry as an accomplished,

14 respected utility manager." (Compl. ¶ 3.2, Dkt. #1, p.3.)  He had "greatly improved the financial

15 and professional capabilities of the [Utility District].  He and his staff achieved balanced budgets,

16 established multimillion dollar reserve accounts, developed a coherent and guiding corporate

17 structure for the [Utility District], and supervised and developed staff members and their

18 capabilities." (Compl. ¶ 3.6, Dkt. #1, p.3.)  Also, under Washington law "[t]he manager shall be

19 an experienced executive with administrative ability." Wash. Rev. Code § 54.16.100.

20 Wittenberg's performance during his time at the Utility District proves that he was technically

21 competent.

#### 4. Power to Control Others

Wittenberg was "responsible for all managerial, budgetary, personnel and executive management of the [Utility District] and its personnel." (Compl. ¶ 3.4, Dkt. #1, p.3.) "[H]e and his staff . . . developed a coherent and guiding corporate structure for the [Utility District], and supervised and developed staff members and their capabilities." (Compl. ¶ 3.6, Dkt. #1, p.3.) Wittenberg also had the power to hire and fire employees and to determine employee pay raises. Wittenberg clearly had the power to control others.

#### 5. Authority to Speak in the Name of the Policymakers

There are no persuasive facts in the record that lead to a determination that Wittenberg either could or could not speak in the name of the Board or the Utility District. He implemented the policy enacted by the Board, but this does not definitively determine that he was authorized to speak on their behalf.

#### 6. Public Perception

Wittenberg served as the chief administrative officer of the Utility District, implementing the policy of the Board and managing the staff. He was the highest ranking employee of the Utility District. This could create a public perception that Wittenberg held a policymaking position, but there is no evidence that the public had any knowledge of the position or Wittenberg.

#### 7. Influence on Programs

Washington Law states that "the manager may attend all meetings of the commission and its committees, and take part in the discussion of any matters pertaining to the duties of his or her department . . . ." Wash. Rev. Code § 54.16.100. The law also refers to the manager "recommending," "advising," and "certifying" items to the Board. Also, managers may hire and

fire employees under their supervision. While Washington law does not say that the manager may create programs, it does give strong evidence that the manager has influence over the programs of the Utility District. Additionally, Wittenberg stated that "he and his staff . . . developed a coherent and guiding corporate structure for the [Utility District], and supervised and developed staff members and their capabilities." (Compl. ¶ 3.6, Dkt. #1, p.3.) He also claimed that he "greatly improved the financial and professional capabilities of the [Utility District]. (Wittenberg Decl., ¶ 27, Dkt. #29, p. 8.) And, that "under my leadership, we improved service, reduced outages, improved water capability, improved regulatory compliance, developed better protocols for employee training and safety, developed significant cash reserves, and brought in nearly $2 million in grant funding." *Id*.

These facts lead to a conclusion that Wittenberg has influence on the policy adopted by the Board. And, because the General Manager is broadly tasked with implementing the resolutions of the Board, he has influence over the way the policy will be carried out.

### 8. Contact with Elected Officials

Washington law mandates that the manager keep the Commissioners fully advised of the programs under his or her supervision and make recommendations to the Board. *See* Wash. Rev. Code § 54.16.100. Wittenberg implemented the policies adopted by resolution of the Board. (*See* Compl. ¶ 3.5, Dkt. #1, p.3.) He was permitted to attend all Utility District board meetings and required to make recommendations to the Board. The facts demonstrate that he had constant contact with elected Board members.

### 9. Responsiveness to Partisan Politics and Political Leaders

Wittenberg was hired by the three member elected Board of the Utility District in 2001. At the time of his termination, only one of the original Commissioners remained on the Board.

1  The new members of the Board retained Wittenberg as General Manager from approximately
2  2006 until his termination in January of 2011.  While this could suggest that his position might
3  be unresponsive to partisan politics or political leaders, the very low turnover within the
4  commission gives little evidence to support this conclusion. However, as the executive in charge
5  of implementation of the Boards decisions, Wittenberg was directly accountable to the Board.
6  They had the authority, by a majority decision, to fire Wittenberg if they saw fit.  And, it is
7  undisputed that the General Manager must follow policies set forth by the politically-elected
8  Board members.

9  **D.  Wittenberg Is a Policymaker**

10  Under the *Fazio* factors, Wittenberg's duties as General Manager fall within the
11  policymaker exception for 5 of the 9 factors, including the "most critical factor"—influence over
12  programs.  *See Walker*, 272 F.3d at 1133.  Additionally, Wittenberg possessed technical
13  competence and broad responsibilities—two of the three "important factors" recognized by the
14  Ninth Circuit in *Walker*.  *Id* (noting that influence over programs is the most critical factor" and
15  then discussing broad responsibility, technical competence, and public perception as important
16  factors).  The remaining four factors are either neutral or evidence is simply absent.

17  Viewing the *Fazio* analysis in light of the underlying purpose of the exception, this Court
18  must conclude that Wittenberg was a policymaker.

19  **E.  Qualified Immunity**

20  Even if Plaintiff was not a policymaker, and his termination violated the First
21  Amendment, Defendants are still entitled to qualified immunity.  "Qualified immunity shields
22  federal and state officials from money damages unless a plaintiff pleads facts showing (1) that
23  the official violated a statutory or constitutional right, and (2) that the right was 'clearly
24

established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id*. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal alterations omitted).

The First Amendment right to freedom of expression, and the right of public employees to engage in associative activity without retaliation, have long been established. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984); *Smith v. Arkansas State Highway Emp. Local 1315*, 441 U.S. 463, 465 (1979). However, the critical question here is whether a reasonable official in the Defendant's position should have known that Wittenberg was not a policymaker whose political loyalty was important to the effective performance of his job. *See Lopez-Quinones v. Puerto Rico Nat'l Guard*, 526 F.3d 23, 27 (1st Cir. 2008) ("The crucial question here is whether a reasonable official acting at the time of Lopez' termination should have known on what side of the *Elrod*/*Branti* line Lopez' own position fell."). If the Defendants "could… have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right," they are entitled to qualified immunity. *Greene v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009) (citing *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)).

The Court concludes it erred in denying qualified immunity in the initial summary judgment motion. Defendants could have reasonably but mistakenly believed that Wittenberg was a policymaker. Although there is limited evidence asserting that Wittenberg's position allowed him to speak for the district, that the public knew of his existence, or that his pay was high relative to others in the district, a majority of the other factors within the *Fazio* analysis

were encompassed within his duties. His job description was broad and vague, he had significant influence on programs, had contact with elected commissioners, had high technical competence, and had the power to control others.

### F. Public Utility District No. 1 of Skamania County Is Not Liable for Actions of the Individual Defendants

To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 690–91 (2009); *Larez v. City of Los Angeles*. 946 F.2d 630, 646-47 (9th Cir. 1991). Nowhere in the complaint does Wittenberg allege that the violation of his constitutional rights was caused by the Public Utility District ratifying any unlawful conduct. Nor does Wittenberg allege that the individual defendants—Commissioners Esch and Gale— acted pursuant to any official custom, pattern, or policy of the District. Therefore, there is no *Monell* claim stated in the complaint and the Utility District cannot be held liable under the § 1983 claim for any actions of the Defendants.

## IV. CONCLUSION

For the reasons above, the Motion for Reconsideration (Dkt. #44) is **GRANTED**, and summary judgment is appropriate. The case is **DISMISSED WITH PREJUDICE**.

Dated this 25th day of July, 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE